### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**PAUL GREGORY GRAHAM**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL NO. 2:22-cv-00161-HSO-BWR**

**COMMISSIONER OF SOCIAL**                                          **DEFENDANT**
**SECURITY,** *Kilolo Kijakazi*

## REPORT AND RECOMMENDATION

Plaintiff Paul Gregory Graham seeks judicial review of the final decision of the Commissioner of Social Security Administration denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). Plaintiff filed a Brief [13], the Commissioner filed a Response [15], and Plaintiff did not file a rebuttal. Having reviewed these submissions, the administrative record, and relevant law, it is recommended that the Commissioner's decision be reversed and this case remanded to the Social Security Administration for further proceedings because the ALJ made a residual functional capacity determination (RFC) based on her own lay interpretation of a 2021 MRI of Plaintiff's lumbar spine that she was not capable of evaluating without the input of a medical expert. As a result, the ALJ's RFC determination is not supported by substantial evidence.

## I.  BACKGROUND

Plaintiff filed an application for DIB on December 15, 2020, alleging disability beginning May 1, 2018, when he was 48 years of age, due to arthritis, two failed knee

replacements, cancer left leg liposarcoma stage I, back pain, hip pain, feet pain, and toe numbness of the left foot. R. [6] at 119. Plaintiff has a high school education, communicates in English, and worked for the State of Mississippi at a mental health facility as a building maintenance supervisor and maintenance repairer. *Id.* at 24, 29, 96-99, 113.

Plaintiff's application for benefits was denied initially and upon reconsideration. He requested a hearing before an ALJ, and a telephonic hearing before an ALJ was held on January 6, 2022. *Id.* at 19. Plaintiff and a vocational expert testified. *Id.* at 93-114. Plaintiff was represented by counsel. *Id.* at 88.

On January 27, 2022, the ALJ issued a decision unfavorable to Plaintiff. *Id.* at 19-31. Applying the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4), the ALJ determined that Plaintiff was not disabled from his alleged onset disability date of May 1, 2018, through the date of the ALJ's decision, January 27, 2022. *Id.* at 30-31. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2018. *Id.* at 21. At step two, the ALJ found the following "severe impairments" as defined by the Social Security Administration:

> degenerative disc disease of the lumbar spine, lumbar spine radiculopathy, osteoarthritis of bilateral knees, diabetes mellitus, obesity, status-post two left knee replacements, neuropathy, status-post removal of sarcoma of the left knee, bilateral plantar fasciitis, and hypertension (20 CRF 404.1520(c)).

*Id.* at 22.

At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment for presumptive disability. *Id.* at 22-23. At step four, the ALJ determined that Plaintiff retained the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs. However, the claimant should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. Last, the claimant should not work around unprotected heights or dangerous moving mechanical parts.

*Id.* at 23-24.

Relying on vocational expert testimony, the ALJ determined that Plaintiff could not perform his past work but could perform other jobs existing in significant numbers in the national economy, such as the light, unskilled representative occupations of "marking clerk retail industry price marker," clerical marker, and routing clerk. *Id.* at 30, 113-14. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner and subject to judicial review under 42 U.S.C. § 405(g).

For at least seven reasons, Plaintiff argues that the ALJ's RFC determination failed to describe the total limiting effects of Plaintiff's impairments because "the record simply does not support the ALJ's finding that Plaintiff can stand and walk all or most of the day, 40 hours a week" despite his knee, back, and leg pain, and the effects of pain medication. Pl.'s Br. [13] at 14. First, Plaintiff maintains that the ALJ did not provide the specific analysis required for analyzing Plaintiff's self-described limitations. *Id.* at 5-9, 11, 13-14. Second, Plaintiff asserts that meaningful judicial review is precluded because the ALJ incorrectly stated that light work requires less

3

frequent standing than medium and heavy work. *Id.* at 7. Third, Plaintiff argues that the ALJ erred by formulating the RFC based upon a September 2021 MRI of Plaintiff's lumbar spine without an updated functional assessment from a physician. *Id.* at 10-11. Fourth, Plaintiff submits that the ALJ ignored "chronic findings of antalgic gait, inability to stand fully upright, decreased range of motion, and/or lower extremity weakness" and did not reconcile these findings with the conclusion that Plaintiff can stand and walk for long periods. *Id.* at 11-14. Fifth, Plaintiff argues that the ALJ failed to explain how Plaintiff's daily activities were inconsistent with Plaintiff's report that "he attempted to work, but was consistently unable to do so because of the pain he experiences that prevent him from crawling, walking or standing for extended periods, hold his foot down, or climb a ladder." *Id.* at 14-15. Sixth, Plaintiff maintains that the ALJ did not correctly consider the aggressiveness of his conservative treatment and her decision "suggesting that a disabling orthopedic condition only exists when surgery has been performed" is not supported by the Social Security Regulations. *Id.* at 9-10, 15-16. Seventh, Plaintiff asserts that the ALJ was obligated to consider, but did not consider, Plaintiff's stellar work history. *Id.* at 16-17.

## II. <u>DISCUSSION</u>

### A. <u>Standard of Review</u>

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the

evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018). The Court does not "reweigh the evidence in the record, try the issues *de novo,* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Salmond,* 892 F.3d at 817. "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations and punctuation omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* "The claimant bears the burden on the first four steps." *Id.* "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

A claimant's RFC is used at the fourth step to determine if he or she can still do past relevant work and at the fifth step to determine whether he or she can adjust to any other type of work. 20 C.F.R. § 416.920(e). "The residual functional capacity determination is not a medical opinion, but an administrative finding of fact." Social Security Ruling 96–8p, Titles II & Xvi: Assessing Residual Functional Capacity in

Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) n. 4). It is an assessment, based on all the relevant evidence in the record, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The sole responsibility for assessing a claimant's RFC rests with the ALJ, who is not required to incorporate limitations into the RFC determination that he or she did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

B.  <u>The ALJ Erred by Formulating Plaintiff's RFC Based on Her Lay Interpretation of a September 2021 MRI of Plaintiff's Lumbar Spine</u>

Plaintiff's strongest argument is addressed first and alone warrants reversal and remand. Pl.'s Br. [13] at 10-11, 14. The ALJ erred by formulating Plaintiff's RFC based on the ALJ's own lay interpretation of a September 2021 MRI of Plaintiff's lumbar spine without a medical expert's input.

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence *might* have led to a different decision." *Id.* at n. 22 (emphasis in original).

The parties are largely in agreement as to Plaintiff's medical history, and only the most significant history as it relates to judicial review is highlighted here. The

September 2021 MRI of Plaintiff's lumbar spine post-dates the state agency physicians' reviews at the initial and reconsideration levels in March 2021 and July 2021, respectively. Both state agency physicians found, among other conclusions, that Plaintiff retained the capacity to "stand and/or walk (with normal breaks) for a total of: About 6 hours in an 8 hour workday" and "sit (with normal breaks) for a total of: About 6 hours in an 8 hour workday." R. [6] at 121, 127. They found Plaintiff could climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; balance frequently; and occasionally kneel, crouch, and crawl. *Id.* at 121-22, 127-28. The ALJ considered these assessments persuasive. *Id.* at 28-29. The ALJ also emphasized an x-ray of Plaintiff's lumbar spine from May 2021 where the physician's impression read, "Multilevel degenerative change mild to moderate degree most prominent at L3-4 and L4-5. Overall just minimally progressive from the previous study." R. [6] at 27, R. [11] at 334. The ALJ concluded that "[b]oth [state agency physician] opinions are consistent with the claimant's objective medical records that show the claimant has remained active despite his impairments, and the imaging shows no significant progressive physiological changes as demonstrated in [the May 2021 x-ray of Plaintiff's lumbar spine]." R. [6] at 29.

The ALJ next moved to the medical records of Richard E. Clatterback, M.D., an orthopedic surgeon who examined Plaintiff on September 22, 2021 and reviewed a September 2021 MRI of Plaintiff's lumbar spine. R. [6] at 27, R. [11] at 799-817. Plaintiff was referred to Dr. Clatterback by Imad Bitar, M.D., a treating physician specializing in arthritis. R. [7] at 615, R. [11] at 816. The ALJ first highlighted Dr.

Clatterback's examination finding that Plaintiff had "slightly reduced 1+ patellar reflexes bilaterally" and some decreased range of motion "in the left AT distribution. There is some weakness there as well 4/5." R. [6] at 27; R. [11] at 806. The ALJ then copied into her decision the MRI imaging findings showing

> . . . severe disc degeneration at L3-4, L4-5 and L5-S1 with Andersons lesions/Modic endplate changes . . . some foraminal disease but nothing that appears compressive. There is a right paracentral acute appearing an upwardly migrated disc herniation at L2-3, L1-2 appears to be fairly well-preserved. It narrows the lateral recesses and displaces the nerve roots but does not appear to severely compress them.

R. [6] at 27; *see* R. [11] at 806.

The ALJ finally focused on Dr. Clatterback's impression. Dr. Clatterback wrote:

> I discussed with Mr. Graham and his wife the results of the MRI of the lumbar spine as noted above. He has disc degenerative changes diffusely. Most of this appears chronic. In regards to the right leg symptoms he has an upwardly migrated acute appearing disc herniation there at L2-3 that narrows the right lateral recess and could potentially be contributing to his symptoms especially when he is awaiting his spine. Ultimately surgery could be considered here. We have recommended that he attempt an epidural steroid injection to see if this could potentially improve his symptoms. . . . We will place a referral to physical medicine to consider injections. I have scheduled follow-up with the patient again in 2 months to see how he has responded to his injections. Again, surgery is ultimately an option here. . . .

R. [11] at 807; *see* R. [6] at 27.

The ALJ concluded based on Dr. Clatterback's records that "[t]here is no evidence that the claimant has required surgical intervention at this point, which reasonably suggests the claimant's symptoms have not significantly worsened. Nevertheless, the undersigned included additional limitations on postural activities

and environmental hazards after considering this objective evidence of worsening back pain." R. [6] at 27. Later in the opinion, the ALJ states: "Giving the claimant the benefit of the doubt and considering the recent evidence that suggests minimal progressive worsening of his back impairment, the undersigned has included additional postural and environmental limitations." *Id.* at 29. The ALJ departed from the opinions of the state agency physicians by finding that Plaintiff could occasionally, as opposed to frequently, climb ramps and stairs; never, as opposed to occasionally, climb ladders, ropes, and scaffolds; and occasionally, as opposed to frequently, balance. *Id.* at 24, 121-22, 127-28. The ALJ did not add a limitation concerning Plaintiff's ability to stand and walk. *Id.* at 23-24.

In support of her argument that the ALJ impermissibly interpreted the September 2021 MRI of Plaintiff's lumbar spine which was too technical for her to interpret, Plaintiff cites *Moore v. Saul,* where the United States District Court for the Northern District of Mississippi remanded for the ALJ to obtain an updated medical source statement regarding the claimant's RFC "to ensure that a medical expert determines what, if any impact the medical developments after the initial RFC determination by [the state agency physician] had on [the claimant's] ability to work." No. 3:20-cv-161-MPM-JMV, 2022 WL 987735 (N.D. Miss. Mar. 31, 2022). The Northern District of Mississippi distinguished between objective medical evidence and "raw medical evidence," clarifying that objective medical evidence refers to "medical evidence where the extent of functional loss and its effects on job performance would be apparent even to a lay person," while "raw medical evidence"

refers "to evidence that does not permit 'common sense judgements about functional capacity.'" *Id.* at *2. (citations omitted).

The developments after the state agency physicians' assessments in *Moore* included "an MRI, subsequent pain, and treatment for [the claimant's] back and knee that ha[d] not been considered by any medical expert." *Id.* at *3. The *Moore* court held that "[w]ithout a medical expert's input, the ALJ was not permitted to draw his own medical conclusion from that data" because "[a] lay person would not readily understand how medical notations about disc bulging and 'moderate facet degenerative changes' impact one's ability to work." *Id.* at *2-3. The court clarified that its holding "d[id] not require the ALJ to give any specific evidentiary weight to that medical statement or to defer to it" because the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* at *1 (citing *Martinez v. Charter*, 64 F.3d 172, 176 (5th Cir. 1995)).

The Commissioner has not addressed *Moore,* but just as the Commissioner did in *Moore,* opposes the argument that the ALJ interpreted raw medical data with the Court of Appeals for the Fifth Circuit's opinions in *Taylor v. Astrue,* 706 F.3d 600, 600 (5th Cir. 2012); *Fontenot v. Colvin,* 661 F. App'x 274, 277 (5th Cir. 2016); and *Barrett v. Barnhill,* 906 F.3d 340, 343 (5th Cir. 2018). The Commissioner cites *Taylor* for the assertion that "what [claimant] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor*, 706 F.3d at 603. The Commissioner cites *Fontenot* for the assertion that "[i]t is the responsibility of the ALJ to interpret 'the medical evidence to

determine [a claimant's] capacity for work.'" *Fontenot,* 661 F. App'x at 277 (quoting *Taylor,* 706 F.3d at 603). The Commissioner cites *Barrett* for the assertion that "experienced ALJs can draw their own conclusions based on accurate medical information." *Barrett,* 906 F.3d at 343. The Commissioner additionally cites *Miller v. Kijakazi,* for the assertion that an ALJ may use updated medical evidence to craft a more limited RFC than found by a state-agency physician because it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work." No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (quoting *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995)).

As found in *Moore,* the opinions in *Taylor, Fontenot,* and *Barrett* cannot be properly extended "to support the argument that an ALJ may craft an RFC without medical expert opinion in matters involving raw medical evidence." *Moore,* 2022 WL 987735 at *2. Nor can *Miller.* The parties have not provided precedent from the Fifth Circuit addressing the difference between objective medical evidence and raw medical evidence. Plaintiff cites *Frank v. Barnhart,* where the Fifth Circuit observed that it appeared from a paragraph in the ALJ's decision that "the ALJ made his own medical conclusions about whether a patient would show signs of muscle atrophy or muscle tone." 326 F.3d 618, 622 (5th Cir. 2003). But the Fifth Circuit in *Frank* declined to reach the merits of that argument, finding any error harmless because of other overwhelming evidence in the record. *Id.* Before doing so, the Fifth Circuit noted that "[t]he Seventh Circuit has, in several cases, warned ALJ's against 'playing doctor' and making their own independent medical assessments." *Id.* The Fifth Circuit cited

*Schmidt v. Sullivan,* where the Seventh Circuit concluded that "judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." 914 F.2d 117, 118 (7th Cir. 1990).

In addition to *Moore* from the United States District Court for the Northern District of Mississippi, several decisions from the Seventh Circuit are instructive and support the conclusion that the ALJ erred in this case. *See Durham v. Kijakazi,* 53 F.4th 1089, 1095 (7th Cir. 2022) (stating "we repeatedly have criticized ALJs for interpreting the results of an MRI and using that interpretation as a basis for denying benefits"); *McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018) (finding the ALJ erred by comparing results of an MRI with earlier medical evidence to arrive at his own conclusion as to whether the claimant's back injury had worsened or maintained over time); *Akin v. Berryhill,* 887 F.3d 314, 317 (7th Cir. 2018) (concluding that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with [her] assessment"); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) (finding, "Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence"); *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014) (stating "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves").

The ALJ was not qualified to draw her own lay conclusions about how severe disc generation at L3-4, L4-5, and L5-SI, with "Anderson's lesions" and "modic

endplate changes," with an upwardly migrated disc herniation at L2-3 impacted one's ability to work. The record contains no medical expert evaluation of the September 2021 MRI in the context of what, if any, functional limitations the findings would support. There is nothing in Dr. Clatterback's records to show that Dr. Clatterback or any other medical expert found that the September 2021 MRI was "objective evidence of worsening back pain" or that it showed minimal progression from previous studies. Dr. Clatterback did not compare the September 2021 MRI with earlier radiological studies. No medical expert did. The ALJ's conclusion that Plaintiff's September 2021 MRI was "objective evidence of worsening back pain" was necessarily her own lay opinion. *See Dohner v. Saul*, No. 1:18-CV-251-HAB, 2019 WL 6888450, at *4 (N.D. Ind. Dec. 18, 2019) (finding "[t]he lack of any direction from a medical expert means that the ALJ's finding of consistency between the state agency physician's RFC determination and the MRI results is necessarily the ALJ's opinion alone").

The ALJ's RFC determination was not supported by substantial evidence because it was based in part on the ALJ's interpretation of raw medical evidence that could not be interpreted by a layman. This error is not cured or harmless because the ALJ drew conclusions from the September 2021 MRI to support a more restrictive RFC because an additional medical opinion might have led to a different decision. *See Ripley,* 67 F.3d at 557 n. 22. The issue is potentially outcome determinative because if Plaintiff had been limited to sedentary work rather than light work, he would have been found disabled under the Grid Rules. *See* 20 CFR, Part 404, Sbpt. P, App'x 2, §

13

201.12 (directing a finding of disability for a closely approaching advanced age individual with a high school education, no transferable skills, who is limited to sedentary jobs). The conclusion under these facts does not equate to a bright-line rule that an ALJ must obtain a new expert opinion every time there is new medical evidence nor does it equate to a finding that every new MRI requires expert evaluation. *Compare Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (finding ALJ did not err in failing to consult an expert regarding MRI that showed "mild" abnormalities) *with Dohner,* 2019 WL 6888450 at *4 (stating "[i]t is the fact that the MRI scan did not mention functional limitations that makes the ALJ's ruling problematic"). Here, the September 2021 MRI was not susceptible to a common-sense judgment about functional capacity, and the ALJ overstepped the bounds of a lay person's competence to render a medical judgment.

The decision of the ALJ should be reversed and this case remanded to the Social Security Administration to develop the record before determining Plaintiff's RFC by obtaining a medical opinion from a physician who has full access to Plaintiff's medical records and can opine regarding the impact of Plaintiff's condition upon his ability to work. It is unnecessary to reach the other grounds Plaintiff asserts for remand as the matter should be remanded for the reason discussed.

## III.  <u>RECOMMENDATION</u>

It is recommended that the Court reverse the ALJ's decision, enter judgment for Plaintiff, and remand this case to the Commissioner under 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IV.  <u>NOTICE OF RIGHT TO OBJECT</u>

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 23rd day of January, 2024.

*s/ Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

15